UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EVANSTON INSURANCE COMPANY, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 09-CV-0049-CVE-TLW |
| ) | |
| DERIC DEAN, ICES CORPORATION, and ) | |
| THERMWOOD CORPORATION, ) | |
| ) | |
| **Defendants.** ) | |

**OPINION AND ORDER**

Now before the Court is Plaintiff's Motion for Summary Judgment and Brief in Support (Dkt. # 25). Plaintiff Evanston Insurance Company (Evanston) seeks summary judgment on its claim for declaratory relief and asks the Court to enter a judgment declaring that it has no obligation to defend or indemnify ICES Corporation (ICES) from claims filed in state court by Deric Dean arising out of a workplace injury.

**I.**

On or about April 5, 2006, Dean was employed by ICES and sustained an injury[1] while performing work for ICES. Specifically, Dean was operating a mill machine at ICES' plant in Cleveland, Oklahoma. The mill machine was owned by ICES and manufactured by Thermwood Corporation (Thermwood). Dean filed a lawsuit against ICES and Thermwood, <u>Deric Dean v. ICES Corporation, Thermwood Corporation, and John Doe</u>, CJ-2008-90 (District Court of Pawnee County, Oklahoma) alleging a manufacturer's products liability claim and an intentional tort claim

---

[1]  Although the injury is not described in Dean's petition, the record shows that Dean claims that one of his fingers was amputated while changing a saw blade on a mill machine. Dkt. # 25, Ex. 7, at 1.

under Parret v. Unicco Service Company, 127 P.3d 572 (Okla. 2005). Dkt. # 25, Ex. 1. Dean alleges that ICES "knowingly ordered [Dean] to operate the subject mill machine with the knowledge that there was a substantial certainty that an injury would occur." Id., at 3. He also alleges that ICES "strongly discouraged the use of emergency stop(s) devices and/or safety mechanisms." Id. at 4. In support of his manufacturer's products liability claim, Dean alleges that the defendants "knew or should have known that the machine was defective and unreasonably dangerous to those persons likely to use the product for the purpose and in the manner for which it was intended to be used." Id. Dean claims that neither defendant is entitled to the exclusive remedy protection of Oklahoma's Workers' Compensation Act, OKLA. STAT. tit. 85, § 1 et seq.[2] Id. It is not clear from the petition whether Dean intends to assert both claims against ICES and Thermwood. Dean seeks actual and punitive damages in excess of $10,000.

Evanston issued a Commercial General Liability Policy no. CL350400055 (the Policy) to ICES and the Policy was effective from December 23, 2005 to December 23, 2006.[3] See Dkt. # 25, Ex. 6. Evanston agreed to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the Insured against any 'suit' seeking those damages." Id. at 17. However, Evanston has no duty to defend ICES if the Policy does not provide coverage. Id. at 7

---

[2] However, it appears that Dean has already received workers' compensation benefits from ICES' workers' compensation insurer, CompSource Oklahoma. See Dkt. # 25, Ex. 7 (reservation of rights letter from Evanston to ICES noting that Dean received "indemnity and medical benefits" under the Oklahoma Workers' Compensation Act).

[3] The original Policy issued to ICES by Evanston was effective from December 23, 2002 to December 23, 2003, and was renewed through at least December 23, 2006. See Dkt. # 25, Exs. 6 and 7.

("Where there is no coverage under this policy, there is no duty to defend."). The Policy requires Evanston to defend ICES against claims for bodily injury and property damage "caused by an 'occurrence.'" Id. An occurrence is defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 27.

The Policy provides many exclusions from coverage and some of the exclusions are potentially relevant to Dean's claims against ICES. The Policy excludes coverage for "expected or intended injury," which is defined as a "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." Id. at 17. The Combination General Endorsement replaces any Policy language concerning employer liability with the following employer liability exclusion:

> This insurance does not apply to any claim, suit, cost or expense arising out of "bodily injury" to
>
> > (1) any employee of a Named Insured arising out of and in the course of employment or while performing duties related to the conduct of the insured's business . . . .
>
> This exclusion applies whether an insured may be liable as an employer or in any other capacity, and/or to any obligation to share damages with or repay someone else who must pay damages because of the injury, as well as liability assumed under any "Insured Contract."
>
> Wherever the word "employee" appears above, it shall also mean any member, associate, leased worker, temporary worker or any person or persons loaned to or volunteering services to you.

Dkt. # 25, Ex. 6, at 6. This replaces the former "employer liability" exclusion[4] in the Policy that stated:

---

[4] Evanston cites both provisions in its motion for summary judgment, but it clear that the Combination General Endorsement replaces the "employer liability" exclusion stated in the "Exclusions" section of the Policy. See Dkt. # 25, Ex. 6, at 6, 18.

3

> "Bodily Injury" to:
>
> (1) An "employee" of the insured arising out of and in the course of:
>
> > (a) Employment by the insured; or
> >
> > (b) Performing duties related to the conduct of the insured's business; or
>
> (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.
>
> This exclusion applies:
>
> (1) Whether the insured may be liable as an employer or in any other capacity; and
>
> (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Id. at 18. Evanston also has no duty to defend or indemnify ICES for any obligation incurred "under a workers' compensation, disability benefits or unemployment compensation law or any similar law." Id. at 18. The Policy also excludes any coverage for punitive or exemplary damages. Id. at 7.

After being served with Dean's petition, ICES demanded that Evanston provide a defense against Dean's claims. Evanston denied ICES' demand based on the employee liability exclusion in the Policy, and ICES requested reconsideration of this decision. Dkt. # 30, Ex. B. Evanston provisionally provided counsel to ICES under a reservation of rights, and informed ICES that it would file a declaratory judgment action seeking a determination of the parties' rights and liabilities under the Policy. Dkt. # 25, Ex. 7. However, Evanston stated that it did not believe that the Policy provided coverage to ICES because Dean's injuries were not caused by an "occurrence." Evanston also relied on the employer liability exclusion, the expected or intended injury exclusion, and the workers' compensation exclusion as bases to deny coverage. Evanston asserted that coverage of

Dean's claims would violate Oklahoma public policy, and stated that the Policy did not provide indemnification for punitive damages. Id. at 6-7. On January 30, 2009, Evanston filed this case seeking a declaratory judgment that it has no obligation to defend or indemnify ICES against Dean's claims, and it joined Dean and Thermwood as defendants.[5]

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

---

[5] Thermwood has filed a response to Evanston's motion for summary judgment, asking the Court to declare that Thermwood has no liability to Dean in the state court lawsuit. However, this Court will not interfere with an ongoing state court proceeding and the parties must raise any issues concerning liability for Dean's claims in the state court proceedings. Dean claims that he was improperly joined as a party in this case, and asks the Court to dismiss him as a party and award him attorney fees. It was not improper for Evanston to join all interested parties in this case, and Dean's response clearly shows that he has an interest in the outcome of the insurance coverage dispute. Dkt. # 31, at 4 ("Mr. Dean denies that there is no coverage under the instant policy. ICES is *not* excluded by the policy. Despite what Evanston argues, this policy covers this occurrence."). Therefore, he will not be dismissed as a party.

5

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Plaintiff asserts that it has no duty to defend or indemnify ICES against either of Dean's claims, but its motion for summary judgment appears to be focused Dean's Parret claim. Plaintiff argues that Dean's claims are based on a theory of intentional injury in order to avoid the exclusive remedy provision of the Oklahoma Workers' Compensation Act, and ICES is not entitled to defense or indemnification for alleged intentional injuries suffered by its employees. Dkt. # 25, at 16. In its reply, plaintiff clarifies that it is seeking a declaratory judgment that it has no duty to defend or indemnify ICES for Dean's manufacturer's products liability and Parret claims. Dkt. # 35, at 2. ICES responds that the Policy does not exclude coverage for a manufacturer's products liability claim. Dkt. # 30, at 9. ICES also argues that summary judgment on coverage issues should be denied until the state court determines whether Dean will prevail on his Parret claim. Id. at 22.

6

**A.**

This is a diversity case requiring the Court to construe disputed terms of an insurance policy as required by state law. See Zurich American Ins. Co. v. O'Hara Reg'l Ctr. for Rehabilitation, 529 F.3d 916, 920 (10th Cir. 2008); Houston General Ins. Co. v. American Fence Co., Inc., 115 F.3d 805, 806 (10th Cir. 1997). Under Oklahoma law, an insurance contract should be construed according to the terms set out within the four corners of the document. First American Kickapoo Operations, L.L.C. v. Multimedia Games, Inc., 412 F.3d 1166, 1173 (10th Cir. 2005); Redcorn v. State Farm Fire & Cas. Co., 55 P.3d 1017, 1020 (Okla. 2002); London v. Farmers Ins. Co., Inc., 63 P.3d 552, 554 (Okla. Civ. App. 2002). If the terms of the contract are "unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties." Roads West, Inc. v. Austin, 91 P.3d 81, 88 (Okla. Civ. App. 2004). A court should not create an ambiguity in the policy by "using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on a provision." Wynn v. Avemco Ins. Co., 963 P.2d 572, 575 (Okla. 1998). A policy term will be considered ambiguous only if it susceptible to more than one reasonable interpretation. Max True Plastering Co. v. U.S. Fidelity & Guar. Co., 912 P.2d 861, 869 (Okla. 1996). If an insurance contract contains an ambiguous term, the Court may refer to extrinsic evidence to interpret the insurance policy. Gable, Simmons & Co. v. Kerr-McGee Corp., 175 F.3d 762, 767 (10th Cir. 1999) (citing Pierce Couch Hendrickson Baysinger & Green v. Freede, 936 P.2d 906, 912 (Okla. 1997)).

When construing an ambiguous term in an insurance contract, a court must consider "not what the drafter intended . . . but what a reasonable person in the position of the insured would have understood [the ambiguous provision] to mean." American Economy Ins. Co. v. Bogdahn, 89 P.3d

1051, 1054 (Okla. 2004). An insured may not "insist upon a strained construction of relevant policy language in order to claim a patent ambiguity exists nor can it contradict the written instrument's plain terms under the guise of a latent ambiguity." Bituminous Cas. Corp. v. Cowen Constr., Inc., 55 P.3d 1030, 1034 (10th Cir. 2002). If the Court finds that a Policy provision or exclusion is ambiguous, the Court must apply the doctrine of reasonable expectations to construe ambiguous policy language. See Yaffe Cos., Inc. v. Great American Ins. Co., 499 F.3d 1182, 1185 (10th Cir. 2007); Max True Plastering Co., 912 P.2d at 865. The Oklahoma Supreme Court has stated:

> Under the reasonable expectations doctrine, when construing an ambiguity or uncertainty in an insurance policy, the meaning of the language is not what the drafter intended it to mean, but what a reasonable person in the position of the insured would have understood it to mean. Thus, in construing an ambiguity or uncertainty against the insurer and in favor of the insured, Oklahoma now looks to the "objectively reasonable expectations" of the insured to fashion a remedy.

Spears v. Shelter Mut. Ins. Co., 73 P.3d 865, 868 (Okla. 2003). If the Court finds that any Policy provision or exclusion is ambiguous, the Court must determine the expectations of a reasonable person in the same position as the insured, but this does not automatically mean that the insured's interpretation will prevail. See Max True Plastering Co., 912 P.2d at 867 ("The reasonable expectation doctrine is a double-edged sword-both parties to the insurance contract may rely upon their reasonable expectations.").

Before considering whether ICES is entitled to defense or indemnification for Dean's claims, the Court must consider the nature of the parties' agreement. The Policy states that it provides "Commercial General Liability Coverage," and this is more commonly known as a "CGL" policy. Dkt. # 25, Ex. 6, at 4. "The purpose of a [CGL] policy is to protect the insured from liability for damages when his own defective work or product damages someone else's property." Farmington Cas. Co. v. Duggan, 417 F.3d 1141, 1142 (10th Cir. 2005). The Third Circuit has explained that:

8

> Unlike workmen's compensation policies, general liability insurance policies are not written in conjunction with employers' liability policies. Indeed, while workmen's compensation policies and employers' liability policies both address claims arising out of employee workplace injuries, commercial general liability policies generally exclude injuries to some, if not all, employees from coverage.

USX Corp. v. Liberty Mut. Ins. Co., 444 F.3d 192, 201 (3d Cir. 2006). An "employee exclusion" is a standard provision in most CGL policies, and this type of exclusion prevents an insurer from paying claims against an insured/employer that are covered by state workers' compensation laws. COUCH ON INSURANCE § 129.11 (3d ed. 2009). Most CGL policies also contain an express workers' compensation exclusion to clarify that "[c]overage under a [CGL] policy is only afforded under those circumstances in which an employee maintains the right to bring a tort action notwithstanding the workers' compensation statute or where an employer is not otherwise subject to the respective workers' compensation laws." Id. at § 129.10.

This case involves separate disputes over whether a covered loss has occurred and, if the loss is covered, whether the Policy excludes coverage. "A basic rule of insurance law provides that the insured has the burden of showing that a covered loss has occurred, while the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy." Pitman v. Blue Cross & Blue Shield of Oklahoma, 217 F.3d 1291, 1298 (10th Cir. 2000); see also Security Mut. Life Ins. Co. v. Hollingsworth, 459 P.2d 592 (Okla. 1969). Thus, ICES has the burden to prove that Dean's claims arise from an "occurrence" as defined in the Policy and, if ICES meets its burden, Evanston has the burden to show that an exclusion to coverage applies.

**B.**

Plaintiff argues that the incident causing Dean's injury was not an "occurrence" under the Policy and it has no obligation to defend or indemnify ICES from Dean's claims. Plaintiff claims that Dean's claims are based on assertions that ICES acted with knowledge or substantial certainty that Dean would be injured, and his injury could not have been caused by accident as required for coverage under the Policy. Even if Dean's injury were caused by an occurrence, plaintiff argues that the employer liability or workers' compensation exclusions would be applicable and ICES is not entitled to coverage for Dean's claims.

<u>Dean's Parret Claim</u>

In his state court petition, Dean asserts that his claims against ICES are not barred by the exclusive remedy provision of the Oklahoma Workers' Compensation Act, and relies on the intentional tort exception in an attempt to assert claims against ICES. Dkt. # 25, Ex. 6, at 4. Under Oklahoma law, "the liability prescribed in the Oklahoma Workers' Compensation Act shall be exclusive and in place of all other liability of the employer and any of his employees . . . ." OKLA. STAT. tit. 85, § 12. In <u>Parret</u>, the Oklahoma Supreme Court recognized a limited exception to the general rule that workers compensation provides the exclusive remedy for workplace injuries. If an injured employee has recovered workers' compensation benefits, tort claims against the employer based on the conduct that harmed the employee are barred. <u>Parret</u>, 127 P.3d at 574-75. However, an employer is not shielded from liability for intentional torts under Okla. Stat. tit. 85, § 12. <u>Parret</u>, 127 P.3d at 574-75. The Oklahoma Supreme Court adopted the following standard for intentional conduct:

> In order for an employer's conduct to amount to an intentional tort, the employer must have (1) desired to bring about the worker's injury or (2) acted with the knowledge that such injury was substantially certain to result from the employer's conduct. Under the second part of this standard, the employer must have intended the act that caused the injury with knowledge that the injury was substantially certain to follow. The issue is not whether injury was substantially certain to occur, but whether the employer knew it was substantially certain to occur.

Id. at 579. It is not sufficient for a plaintiff to allege that an employer acted willfully or intentionally, without stating supporting facts in the complaint that could create liability under this standard. The Oklahoma Supreme Court stated:

> Mere allegations of intentional conduct will not circumvent the Workers' Compensation Act. The worker must allege facts which 'plausibly demonstrate' that the employer's conduct was intentional under the 'substantial certainty' standard. "In terms of intentional tort then, the use of the word 'intent' in allegations 'is not a talisman that can change the allegations into colorable claims . . . .'"

Id (internal citations omitted).

The starting point for the Court's inquiry is the proper interpretation of "occurrence" under Oklahoma law. The Policy defines an "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." Dkt. # 25, Ex. 6, at 7. "Accident" is not a technical term and the Court must construe the term in its "plain and ordinary sense." Littlefield v. State Farm Fire and Cas. Co., 857 P.2d 65, 69 (Okla. 1993); see also Farmer's Alliance Mut. Ins. Co. v. Salazar, 77 F.3d 1291, 1297 (10th Cir. 1996) ("According to the Oklahoma Supreme Court, 'the words, 'accident' and 'accidental' have never acquired any technical meaning in law, and when used in an insurance contract, they are to be construed and considered according to common speech and common usage of people generally.'"). The term "accident" implies that an event was unintentional or was an "unexpected happening." United States Fidelity & Guaranty Co. v. Briscoe, 239 P.2d 754, 756-57 (Okla. 1952). An accident generally occurs when "an unusual and

unexpected result" follows the performance of a routine act or an unknown or unexpected cause results in an injury. Id. at 757.

Plaintiff argues that it has no duty to defend or indemnify ICES as to Dean's Parret claim, because there is no possibility that this claim is covered under the Policy. If the trier of fact were to conclude that ICES acted with substantial certainty that Dean would be injured, his injury was not the result of an accident and there was no occurrence giving rise to coverage under the Policy. On the other hand, if the trier of fact of Dean's claim were to determine that his injury resulted from an accident, Dean's claim would be barred by the exclusive remedy provision of the Oklahoma Workers' Compensation Act, see OKLA. STAT. tit 85, § 12, and the workers' compensation or employer liability exclusions would apply. Courts considering whether an intentional tort could constitute an occurrence under Oklahoma law have concluded that intentional torts are not accidental and an insurer is not required to indemnify its insured for alleged intentional torts if the policy limits coverage to accidental injuries. See Farmers Alliance Mut. Ins. Co., 77 F.3d at 1297 (intentional murder was not an occurrence under an insurance policy defining "occurrence" as "accident . . . which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured"); Massachusetts Bay Inc. v. Gordon, 708 F. Supp. 1232 (W.D. Okla. 1989) (injuries caused by intentional assault and battery are not the result of an "accident" because any resulting injury is intended or foreseeable). While a Parret claim based on the substantial certainty standard is distinguishable from intentional assault and battery or murder, a necessary element of a Parret claim is that the employee's injury was substantially certain to occur and the employer was aware of the risk of injury, and an employee must show that his injury was the result of something other than the employer's simple negligence.

The Court concludes that plaintiff has no duty to defend or indemnify ICES against Dean's Parret claim. Dean is clearly attempting to avoid the exclusive liability provided by the Oklahoma Workers' Compensation Act and has alleged an intentional tort against his employer. There is no reasonable way to construe the term "occurrence" to provide coverage for an intentional tort, and ICES has failed to establish that coverage exists for Dean's Parret claim. Even if the Court were to assume that Dean's injuries were caused by an occurrence and arose out of an accidental workplace injury, Dean would be required to litigate this claim in workers' compensation court. The Policy excludes coverage for "any obligation of the insured under a workers' compensation . . . law." Dkt. # 25, Ex. 6, at 18. A tort claim for accidental injury arising out of a workplace injury would clearly fall within this exception. Regardless of whether Dean's injuries were accidental, his Parret claim also falls under the employer liability exclusion, because the Policy does not provide coverage for "any claim, suit cost or expense arising out of "bodily injury" to . . . any employee of a Named Insured arising out of and in the course of employment or while performing duties related to the conduct of the insured's business . . . ." Id. at 6. Thus, plaintiff has no duty to defend or indemnify ICES against Dean's Parret claim, because there is no possibility that this claim is covered under the Policy.

Dean's Manufacturer's Products Liability Claim

Dean's manufacturer's products liability claim might fall within the definition of an occurrence, because a plaintiff may recover for accidental or unintended injuries under this theory of liability. Dean alleges that he was injured while using a mill machine and the mill machine was defective or unreasonably dangerous for use. Id., Ex. 1, at 4. Unlike the Parret claim, Dean does not need to allege that ICES intentionally injured him in order to state a manufacturer's products

13

liability claim. Instead, the key issue is whether a defective product caused Dean's injury, regardless of the intent of ICES in providing the equipment to Dean. Thus, ICES may be entitled to a defense or indemnification for Dean's manufacturer's products liability claim if this claim is not excluded from coverage under some other provision of the Policy.

The Oklahoma Supreme Court first recognized a claim for manufacturer's products liability in Kirkland v. General Motors Corp., 521 P.2d 1353 (Okla. 1974), and, in a subsequent case, explained that "one who sells a product in a defective condition, which is unreasonably dangerous to the user or consumer, is strictly liable for the physical harm to the person or property caused by the defect." Johnson v. Ford Motor Co., 45 P.3d 86, 91 (Okla. 2002). To prove a manufacturer's products liability claim, a plaintiff must establish three elements:

> 1) the product was the cause of the injury;
>
> 2) the defect existed in the product at the time the product left the manufacturer's possession and control;
>
> 3) the defect made the product unreasonably dangerous to the plaintiff or to the plaintiff's property.

Clark v. Mazda Motor Corp., 68 P.3d 207, 209 (Okla. 2003). This is a strict liability claim and a manufacturer or distributor may be held liable for accidental injuries caused by their products. Spence v. Brown-Minneapolis Tank, Co., 198 P.3d 395, 399 (Okla. Civ. App. 2008).

Plaintiff argues that Dean is required to litigate his manufacturer's products liability claim in workers' compensation court, and this claim falls within the workers' compensation exclusion in the Policy. ICES acknowledges that Dean alleges that ICES was "in the business of manufacturing the machine and machinery parts Dean was using at the time of his injuries," and that ICES was "in the business of designing, manufacturing, marketing and placing into the stream of

14

commerce the subject machines and supplies therefrom." Dkt. # 30, at 3. However, ICES does not respond to plaintiff's argument that Dean is required to litigate this claim in workers' compensation court and the Policy provides no coverage for this claim.

The Policy excludes coverage for "[a]ny obligation of the Insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law." Dkt. # 25, Ex. 6, at 18. Plaintiff cites Knowlton v. Tranter, Inc., 672 P.2d 686 (Okla. Civ. App. 1983), where the plaintiff was limited to a workers' compensation remedy against his employer who allegedly designed or manufactured a machine that injured him. The Oklahoma Supreme Court has limited the circumstances when an employee may sue his employer for manufacturer's products liability for allegedly providing defective equipment. Considering the dual-capacity doctrine, which permits an injured employee to sue his employer in tort for actions taken outside of the employment relationship, the Oklahoma Supreme Court stated:

> We reject application of the dual-capacity doctrine to impose liability upon an employer-manufacturer. The employer has a duty arising out of the employment relationship to furnish safe equipment to its employees; and that duty arises whether the equipment is purchased or manufactured by the employer, either in connection with producing the same item for public consumption or otherwise.
>
> There are circumstances in which application of the dual-capacity doctrine is appropriate. The doctrine should not be used when it would serve only to evade the exclusivity provision of the Oklahoma Workers' Compensation Act. The doctrine requires a strict and limited application to avoid imposing liability in every instance upon a defendant-employer.

Weber v. Armco, Inc., 663 P.2d 1221 (Okla. 1983). The Oklahoma Court of Civil Appeals has held that any claim by an injured employee against his employer arising from any on-the-job injury that does not meet the intentional tort exception, including negligence and manufacturer's products

15

liability claims, must be brought in workers' compensation court. Compsource Oklahoma v. L & L Constr., Inc., 207 P.3d 415, 421-22 (Okla. Civ. App. 2008); Knowlton, 672 P.2d at 688.

Dean does not allege any facts suggesting that ICES was acting outside of its capacity as his employer when it provided him the allegedly defective mill machine for his work, and there is no basis to view his manufacturer's products liability claim as arising outside of the employment relationship. Thus, Dean must assert his manufacturer's products liability claim in workers' compensation court unless he can show that this claim is not subject to the exclusive remedy provision of the Oklahoma Workers' Compensation Act.[6] This results in the same paradox as to insurance coverage that resulted for Dean's Parret claim: If Dean's injury resulted from an on-the-job accident and he cannot meet the intentional tort exception, he must proceed against ICES in workers' compensation court. The Policy expressly excludes coverage for this type of claim against ICES under the workers' compensation or employer liability exclusions. If ICES intentionally caused Dean's injury and his claims meet the intentional tort exception to the Oklahoma Worker's Compensation Act, he was not injured as the result of an accident and there is no occurrence giving rise to coverage to ICES under the Policy.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment and Brief in Support (Dkt. # 25) is **granted**. A separate judgment is entered herewith.

**DATED** this 11th day of September, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[6] The Court is not deciding whether Dean is actually required to litigate his manufacturer's products liability claim in workers' compensation court. This would be unwarranted interference with a pending state court case and, in any event, it not necessary to reach this issue to resolve the issue of insurance coverage.